UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

NICHOLAS BUTCHER, as next of kin to )
RICHARD BUTCHER, as Deceased, )
)
    Plaintiff, )
)
v. ) No. 3:12-00251
) Chief Judge Haynes
)
REED BRYSON, et al., )
)
    Defendants. )

# MEMORANDUM

Plaintiff Nicholas Butcher, as next of kin to Richard ("Ricky") Butcher, deceased, filed this action under 42 U.S.C. § 1983 against the Defendants: Darrell Young, as Cannon County Sheriff, and Deputies Reed Bryson and Jordan McGee, in their individual and official capacities.[1] Plaintiff's claims arose out of the fatal shooting of Richard Butcher by Defendants Bryson and McGee while Butcher was driving his truck in circles, or "donuts," on his property. Plaintiff asserted claims for excessive force in violation of Ricky Butcher's Fourth Amendment rights against Defendants Bryson and McGee for fatally shooting Ricky Butcher and against Defendant Young and Cannon County for failing to train adequately the Defendant Deputies. Plaintiff's claims proceeded to a jury trial, and on September 20, 2013, a verdict in favor of Defendants Young[2] and Cannon County and against Defendants Bryson and Reed was entered. (Docket Entry No. 61). The jury awarded Plaintiff

---

[1]Plaintiff voluntarily dismissed his claims against Mike Gannon, as County Executive for Cannon County. (Docket Entry No. 49).

[2]Plaintiff's claim against Defendant Young in his individual capacity was dismissed by the Court at the close of Plaintiff's proof.

$1,500,000 in compensatory damages against Defendant Bryson and $750,000 in compensatory damages against Defendant McGee.

Before the Court is Bryson's and McGee's motion for new trial or remittitur (Docket Entry No. 67), contending that the verdicts were inconsistent and excessive, the Court erred in charging the jury on pain and suffering, and the Court made numerous errors in the admission of evidence. In response, Plaintiff contends that there was sufficient evidence to support the jury's verdict and the Court did not commit any errors in its instructions or evidentiary rulings.

Federal Rule of Civil Procedure 59(a)(1)(A), which governs grounds for new trial, provides as follows:

> (1) The court may, on motion, grant a new trial on all or some of the issues – and to any party – as follows:
>
> > (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court.

The authority to grant a new trial under Rule 59 rests within the discretion of the trial court. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940).

On a motion for a new trial, the Court is to decide if the jury could reasonably reach the verdict based upon the evidence. Powers v. Bayliner Marine Corp., 83 F.3d 790, 798 (6th Cir. 1996). A trial court cannot substitute its judgment on credibility for the jury's determinations. Anderson v. Conwood Co., 34 F. Supp.2d 650, 653 (W.D. Tenn. 1999) (citing Farber v. Massillon Bd. of Educ., 917 F.2d 1391, 1395 (6th Cir. 1990)).

Upon a motion for a new trial, the Court is not to set aside the jury verdict absent a showing of a "'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some

2

fashion, i.e., the proceedings being influenced by prejudice or bias." Holmes v. City of Massillon, Ohio, 78 F.3d 1041, 1046 (6th Cir. 1996). The evidence is also reviewed "most strongly in a light in favor of the verdict." Ross v. Meyers, 883 F.2d 486, 488 (6th Cir. 1989).

In Strickland v. Owens Corning, 142 F.3d 353 (6th Cir. 1998), the Sixth Circuit outlined the following analysis for ruling on a motion for a new trial:

> [I]n ruling upon a motion for a new trial based on the ground that the verdict is against the weight of the evidence, the trial court must compare the opposing proofs, weigh the evidence, and set aside the verdict if it is of the opinion that the verdict is against the clear weight of the evidence. It should deny the motion if the verdict is one which could reasonably have been reached, and the verdict should not be considered unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable.

Id. at 357 (quoting J.C. Wyckoff & Assocs., Inc. v. Standard Fire Ins. Co., 936 F.2d 1474, 1487 (6th Cir. 1991)). Yet, "while the district judge has a duty to intervene in appropriate cases, the jury's verdict should be accepted if it is one which could reasonably have been reached." Bruner v. Dunaway, 684 F.2d 422, 425 (6th Cir. 1982). Thus, the Court shall "'deny the motion if the verdict is one which could reasonably have been reached,' regardless of whether 'different inferences and conclusions could have been drawn or because other results are more reasonable.'" Onuoha v. Continental Airlines, Inc., 97 F. App'x 1, 2-3 (6th Cir. 2003) (quoting J.C. Wyckoff, 936 F.2d at 1487).

### A. Inconsistent Jury Verdicts Based Upon the Amount of Damages

Defendants contend that the jury verdicts are inconsistent on their face because the jury assessed damages against Defendant Bryson in the amount of $1,500,000.00 and against Defendant McGee in the amount of $750,000.00. Defendants argue that if Defendants were jointly involved in the civil rights violation they should therefore be equally liable. Defendants cite Devine v.

Patterson, 242 F.2d 828 (6th Cir. 1957) that while the granting of a new trial is generally "a matter of discretion with the court, it is not so when the verdict is inconsistent on its face." Id. at 832.

In response, Plaintiff contends that the jury was properly charged with language from Bletz v. Gribble, 641 F.3d 743, 754 (6th Cir. 2011), that "a police officer may be responsible for another officer's use of excessive force if the officer 'actively participated in the use of excessive force.'" Id. (quoting Turner v. Scott, 119 F.3d 425, 429 (6th Cir. 1997)). Moreover, Plaintiff contends that Defendants did not submit any other jury instructions as to the allocation of damages among Defendants nor did Defendants timely object under Fed. R. Civ. P. Rule 51 to the verdict form or the jury instructions as to the allocation of damages among the Defendants, thereby waiving any argument of error.

The Sixth Circuit has stated:

> Where there is some question as to the validity of a jury verdict, "it is incumbent upon a trial court . . . 'to reconcile the answers if possible under any view of the evidence in the case.'" Waggoner v. Mosti, 792 F.2d 595, 597 (6th Cir.1986) (quoting Sylvestri v. Warner & Swasey Co., 398 F.2d 598, 603 (2d Cir.1968)). Furthermore, " 'the consistency of the jury verdicts must be considered in light of the judge's instructions to the jury.' " Waggoner, 792 F.2d at 597 (quoting Bates v. Jean, 745 F.2d 1146, 1151 (7th Cir.1984)).

Johnson v. Howard, 24 F. App'x 480, 485 (6th Cir. 2001). Juries are presumed to have followed the instructions given to them by a trial court. Hildebrandt v. Hyatt Corp., 154 F. App'x 484, 489 (6th Cir. 2005); Smith Corona Corp. v. Pelikan, Inc., 784 F. Supp. 452, 468 (M.D. Tenn. 1992).

Defendants' reliance on Devine is misplaced. There, the plaintiff presented proof that he incurred damages in the amount of over $19,000 that was undisputed. 242 F.2d at 829. Nor was there any evidence introduced to the contrary. Id. Although the jury found the defendant liable, it only awarded the plaintiff compensatory damages in the sum of $500.00. Id. The Court concluded

that "[s]ince the verdict was less than the amount of the loss shown and not disputed, the motion for new trial should have been granted." Id. at 832.

Here, the Court charged the jury with language from Turner, 119 F.3d at 429, quoted in Bletz, 641 F.3d at 754, that "a police officer may be responsible for another officer's use of excessive force if the officer actively participated in the use of excessive force." Defendants did not object to this instruction or the verdict form. Nor did Defendants object to the Court's instructions to the jury when, during deliberations, the jury asked for clarification regarding this language. Further, while a police officer may be liable for actively participating in the use of excessive force, there is not any requirement that each officer's liability must be equal. The Court charged the jury that each Defendant was entitled to separate consideration and that each Defendant's case must be decided separately. The evidence demonstrated that Bryson initiated the use of deadly force and fired ten times, whereas McGee joined in firing three shots. Both Defendants were found liable and damages were assessed. Based upon the record, the Court cannot conclude that the jury's verdicts were inconsistent on their face.

## B. Jury Verdicts Should be Remitted

Defendants contend that assuming the verdicts are consistent the verdicts should be remitted. Defendants assert that the proof at trial demonstrated that the gunshot wound to Butcher's leg was inflicted by Bryson. Thus, Defendants argue that if Bryson fired both shots that struck Butcher then the award against McGee would be excessive, but if McGee fired the fatal head shot then the award against Bryson would be excessive because McGee would have been the one who killed Butcher, not Bryson. Defendants also contend that Plaintiff did not present any evidence of Butcher's lost earnings or earnings capacity and that Butcher was a grown male not living with his mother and

without any children. Plaintiff responds that Defendants did not object to the jury verdict form or submit any special instructions regarding the allocation of damages among the Defendants and that the verdicts were consistent with the Court's instructions and with the proof presented at trial.

A district court "is sharply limited in its ability to remit a jury verdict." Champion v. Outlook Nashville, Inc., 380 F.3d 893, 905 (6th Cir. 2004). The jury verdict "should not be remitted by a court unless it is beyond the maximum damages that the jury reasonably could find to be compensatory for a party's loss." Gregory v. Shelby County, 220 F.3d 433, 443 (6th Cir.2000) (quotation marks and citation omitted). Maintaining the award is favored "[u]nless the award is (1) beyond the range supportable by proof or (2) so excessive as to shock the conscience, ... or (3) the result of a mistake." Bickel v. Korean Air Lines Co., 96 F.3d 151, 156 (6th Cir.1996) (citation omitted). "'A trial court is within its discretion in remitting a verdict only when, after reviewing all evidence in the light most favorable to the awardee, it is convinced that the verdict is clearly excessive, resulted from passion, bias or prejudice; or is so excessive or inadequate as to shock the judicial conscience of the court.'" Champion, 380 F.3d at 905-06 (quoting Gregory, 220 F.3d at 443).

The Court disagrees with Defendants' assertion that the record demonstrates that Bryson must have been the deputy who inflicted the gunshot wound to Butcher's leg. Defendant McGee testified that he shot at the passenger cab of the truck. Shelly Betts, a Special Agent forensic scientist with the Tennessee Bureau of Investigations, examined the bullet holes in Butcher's truck and testified as to the direction from which the bullets traveled when striking the truck. Betts testified that the bullet that made the hole labeled "G" entered through the passenger's door below the side view mirror, traveling from the front of the truck towards the back, from the passenger's side towards the driver's side and slightly downward. Betts testified that such a trajectory would be

consistent with Butcher being struck in his right leg by this bullet. A bullet fragment was discovered from the passenger floor. Thus, based upon this evidence, the jury could have concluded that McGee was the deputy responsible for shooting Butcher in the leg. Defendants did not put on any proof as to who inflicted which gunshot wounds.

Moreover, the jury was instructed that a purpose of damages is to compensate for actual harm sufficient to deter constitutional violation. See Carey v. Piphus, 435 U.S. 247, 256–57 (1978) ("To the extent that Congress intended that awards under § 1983 should deter the deprivation of constitutional rights, there is no evidence that it meant to establish a deterrent more formidable than that inherent in the award of compensatory damages."); Frontier Ins. Co. v. Blaty, 454 F.3d 590, 601 (6th Cir. 2006) (quoting Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 307 (1986)) ("The policy of deterrence 'operates through the mechanism of damages that are compensatory-damages grounded in determinations of plaintiffs' actual losses.'"). In reaching the damages awards, the jury may have considered that Bryson initiated the shooting, Bryson fired ten shots while McGee fired three shots, and that based upon the number of shots fired and the forensic evidence, Bryson undoubtedly fired at the rear of the truck. Based upon the evidence, the jury could have concluded that although McGee violated Butcher's rights he did not do so at the same level as Bryson. Thus, the jury may have concluded that Bryson's conduct warranted for deterrent purposes a larger assessment of damages. Nor did Defendants submit any further jury instructions to the Court regarding the allocation of damages among the Defendants.

Defendants also assert that "without any evidence of lost earnings or earnings capacity, and given the fact that Butcher was a grown male not living with his mother and without any children the verdict is excessive." (Docket Entry No. 68 at 2).

"[T]he law of the forum is 'the [principal] reference point in determining survival of civil rights actions, subject to the important proviso that state law may not be applied when it is inconsistent with the Constitution and laws of the United States.'" Jaco v. Bloechle, 739 F.2d 239, 241 (6th Cir. 1984) (quoting Robertson v. Wegmann, 436 U.S. 584, 590 (1978)) (internal quotation marks omitted). Thus, "the principle reference point for determining what type of survivorship claims that may be brought pursuant to § 1983 is Tennessee law." Alexander v. Beale Street Blues Co., Inc., 108 F. Supp.2d 934, 951 (W.D. Tenn. 1999). Two types of damages are recoverable under a § 1983 wrongful death claim:

> The first type of damage involves actual damages to the deceased, which include damages for his or her pain and suffering, medical expenses and funeral costs. See Davidson Benedict Co., 72 S.W. at 977. The second type of damage involves the pecuniary value of the life of the deceased. Pecuniary value is "to be determined upon a consideration of his expectancy of life, his age, condition of health and strength, capacity for labor, and for earning money through skill in any art, trade, profession, occupation, or business, and his personal habits as to sobriety and industry." Id. (internal citations omitted).

Id. at 953.

Yet, "the assessment of damages is not governed by fixed rules of mathematical precision, but the matter is left to the sound discretion of the jury." Thrailkill v. Patterson, 879 S.W.2d 836, 841 (Tenn. 1994) (citing Wilkerson v. Altizer, 845 S.W.2d 744, 749 (Tenn. App.1992)); accord Strother v. Lane, 554 S.W.2d 631, 636 (Tenn. App.1976) (noting that there is not a set rule to measure the value of a life). In Hutton v. City of Savannah, 968 S.W.2d 808 (Tenn. App. 1997), the Tennessee Court of Appeals noted that Tennessee courts "have recognized that human lives have some intrinsic pecuniary value beyond the market value for their services." Id. at 813.

This Court instructed the jury that the standard for awarding damages for compensation for all injuries included "a loss of life, physical pain and mental anguish as well as the injury to the person's dignity as well as for any disgrace or humiliation that he was subjected to by a defendant." The Court further instructed that Plaintiff was "also entitled to compensation for mental anguish, suffering and loss of association with his family due to the excessive use of force."

Plaintiff presented proof that Butcher, age 28, was good at working on vehicles and fixing things for family members, had a life expectancy of 49 and one half years and was still alive when the paramedic arrived. The Court did not allow Plaintiff to present proof of the family's loss of consortium, only Ricky Butcher's.

Accordingly, based upon the evidence presented, the Court concludes that the jury's award of damages, while large, is not beyond the range of supportable proof or so excessive as to "shock the conscience."

### C. The Court's Exclusion of Evidence of Butcher's Intoxication

Defendants contend that the Court erred in excluding evidence of Butcher's intoxication as such evidence was probative of Butcher's erratic behavior that raised the level of apparent threat to the deputies and contributed to their decision to use deadly force.

As cited by the Court at the trial of this action, in Jefferson v. Lewis, 594 F.3d 454 (6th Cir. 2010), the Sixth Circuit stated:

> "All claims that law enforcement officers have used excessive force—deadly or not ... should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Floyd v. City of Detroit, 518 F.3d 398, 405 (6th Cir.2008) (quoting Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). We apply "the objective reasonableness standard, which depends on the facts and circumstances of each case **viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight.**" Dunn v. Matatall, 549 F.3d 348, 353 (6th

9

Cir.2008) (citing Graham ). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396–97, 109 S.Ct. 1865. Further, **we conduct the reasonableness inquiry objectively, based on the "information possessed" by the officer, without regard to the officer's subjective beliefs and without regard to facts not known by the officer at the time of the incident.** Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In an excessive force claim involving an officer's use of deadly force, the Supreme Court has instructed that the test is whether the officer "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." Tennessee v. Garner, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

. . . .

"[O]nly in rare instances may an officer seize a suspect by use of deadly force." Sample v. Bailey, 409 F.3d 689, 697 (6th Cir.2005) (quoting Whitlow v. City of Louisville, 39 Fed.Appx. 297 (6th Cir.2002)). These rare circumstances arise when **the facts known to the officer at the time of the incident** objectively give rise to probable cause to believe that the suspect poses a threat of serious physical harm to the officer or third persons. Garner, 471 U.S. at 11, 105 S.Ct. 1694. Thus, while it is true that "[a]s a matter of law, an unarmed and nondangerous suspect has a constitutional right not to be shot by police officers," Floyd, 518 F.3d at 407, **whether a suspect is "nondangerous" is based on the facts known to the officer at the time of the incident, not on hindsight.**

Id. at 460-61 (emphasis added) (footnote omitted).

The deputies did not have any knowledge of Butcher's intoxication prior to their arrival, nor did they observe his appearance or see any signs exhibiting alcohol use. The testimony also revealed that Butcher, along with others, frequently enjoyed doing "donuts" in the field next to Butcher's home. Defendant Bryson admitted that there was nothing unlawful about doing "donuts" on the property. These facts do not establish that Butcher's actions were erratic. Thus, evidence of Butcher's intoxication was properly excluded based objectively on the facts known to the deputies at the time of the incident, rather than in hindsight.

10

### D. Testimony of Timothy Fabri

Defendants contend that the Court erred in excluding the testimony of Timothy Fabri that Butcher indicated that he was going to commit "suicide by cop." Defendants contend that such statement was admissible as an admission by a party opponent under Fed. R. Evid. Rule 801(d)(2) or as a statement of Butcher's then-existing state of mind such as his motive, intent, or plan under Rule 803(3).

As stated in Section C., claims of excessive force are "'analyzed under the Fourth Amendment and its reasonableness standard." Id. at 460 (internal quotation marks and citations omitted). Thus, the Court's analysis is "based on the 'information possessed' by the officer, without regard to the officer's subjective beliefs and without regard to facts not known by the officer at the time of the incident." Id. at 461 (citation omitted).

The deputies were unaware of Butcher's alleged statement that he was contemplating "suicide by cop." Therefore, based upon case authority, Fabri's statement was properly excluded because the deputies were unaware of this information prior to the shooting.

### E. The Court's Jury Charge on Pain and Suffering

Defendants assert that there was not any evidence of conscious pain and suffering and that although Butcher may have lived for a period of time after he was shot, being alive and being conscious are not the same.

Damages recoverable under § 1983 for an excessive force claim are the same type of damages that arise from common law tort damages. Carey, 435 U.S. at 253- 259 ("The legislative history of § 1983 . . . demonstrates that it was intended to '[create] a species of tort liability' in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the

11

Constitution.") (citations omitted); Tinch v. City of Dayton, Nos. 94-3436, 94-3516, 1996 WL 77445, at *1 (Feb. 20, 1996) ("Accordingly, 42 U.S.C. § 1988 directs that this Court turn to the common law of the forum state . . . to fill in the interstices in the federal framework."). Under Tennessee law, recovery for pain and suffering requires proof of conscious injury. Knowles v. State, 49 S.W.3d 330, 339 (Tenn. App. 2001) ("[A] wrongful death plaintiff may not recover damages for pain and suffering absent proof of conscious injury.") (citing Hutton, 968 S.W.2d at 811).

From the evidence, the jury reasonably could have drawn an inference that Butcher was shot in his leg before being shot in the back of his head, constituting evidence of pre-death pain and suffering. Further, there was evidence that Butcher was gurgling prior to his death that the jury reasonably could have inferred was an attempt to communicate prior to his death. Thrailkill, 879 S.W.2d at 842 ("[W]hether the decedent lived a few minutes after the accident so as to have suffered any pain as to authorize an award of damages was a question for the jury.") (citing Hall v. Nash, 184 Tenn. 312, 198 S.W.2d 649 (1947)).

Accordingly, the Court concludes that there was sufficient evidence for the jury reasonably to conclude that Butcher experienced pre-death pain and suffering.

### F. Exclusion of Portions of Bryson's Testimony

Defendants contend that the Court's exclusion of Bryson's testimony concerning what he believed Butcher would or would not do prior to the shooting was improper. Defendants contend that Bryson's testimony as to what he observed that led to his actions or inactions was relevant to determining whether Bryson's actions were objectively reasonable when viewed from that of a police officer on the scene.

As stated by the Sixth Circuit, the reasonableness inquiry is an objective one "based on the 'information possessed' by the officer, **without regard to the officer's subjective beliefs** and without regard to facts not known by the officer at the time of the incident." Jefferson, 594 F.3d at 461 (citation omitted and emphasis added). The Court limited Bryson's testimony to what he observed. Thus, Bryson was able to testify as to the manner and direction that the truck was traveling and what actions Bryson took as a result. Therefore, the Court concludes that it properly excluded any testimony about Bryson's speculations about what he believed Butcher was doing, as such beliefs were not based upon facts known to Bryson at the time.

### G. Brandy Romanos's Testimony

Defendants contend that allowing Brandy Romanos to testify that she was not permitted to approach Butcher's vehicle was irrelevant and prejudicial. Romanos's testimony was permitted as to whether Butcher experienced pain and suffering. Bryson testified that Butcher was gurgling after the shooting. Romanos's testimony revealed that she was unable to provide comfort to Butcher. Ttherefore the Court concludes that Romanos's testimony was permissible and that, in any event, Defendants cannot show that the admission of such testimony was so prejudicial as to lead to a "seriously erroneous result." Holmes, 78 F.3d at 1046.

### H. Looper's Patrick Testimony

Lastly, Defendants, relying on the reasons stated in Defendants' motion to exclude (Docket Entry No. 24), contend that the Court erred in permitting Patrick Looper to testify as to the reasonableness and excessiveness of the deputies' actions. In response, Plaintiff asserts that after the Court's ruling (Docket Entry No. 30, Order) on Defendants' motion to exclude, Plaintiff

amended Looper's report to conform to the Court's ruling and Defendants failed to object timely to the altered testimony prior to trial when the proposed expert report was submitted to the Court.

Rule 103(b) of the Federal Rules of Evidence provides that "[o]nce the court rules definitively on the record--either before or at trial--a party need not renew an objection or offer of proof to preserve a claim of error for appeal." In United States v. Brawner, 173 F.3d 966 (6th Cir. 1999), the Sixth Circuit stated:

> [I]f the trial court has made an explicit and definitive ruling on the record of the evidentiary issues to be decided, and has not indicated that the ruling is conditioned upon any other circumstances or evidence, then counsel need not renew the objection at the time the evidence is offered (or would have been offered but for an exclusionary ruling) in order to preserve the error for appeal. However, if the court's ruling is in any way qualified or conditional, the burden is on counsel to raise objection to preserve error.

Id. at 970; United States v. Poulsen, 655 F.3d 492, 510 (6th Cir. 2011); Palmerin v. City of Riverside, 794 F.3d 1409, 1413 (9th Cir. 1986) ("[F]ormal exceptions to court rulings are unnecessary. Fed. R. Civ. P. 46. To require invariably a contemporaneous objection after a rejected in limine motion would be tantamount to requiring formal exceptions. This would exalt the form of timely objection over the substance of whether a proper objection has been made and considered by the trial court.").

The Court's ruling on Defendants' motion to exclude was not qualified or conditional. Therefore, Defendants have not waived their objection. Yet, for the reasons stated in its Order (Docket Entry No. 30), the Court adopts its previous determination that Looper could testify as to whether Bryson and McGee violated nationally recognized police standards governing excessive force and that Looper was not qualified to assess the state of mind of McGee, but could testify as to whether McGee followed recognized policies and procedures.

Accordingly, for these reasons, the Court concludes that Defendants' motion for new trial or remittitur (Docket Entry No. 67) should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the 5th day of September, 2014.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court